STEFANIE SLATER, PLAINTIFF–RESPONDENT, v. MARC B.
SLATER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 24, 1987—Decided January 19, 1988.

Before Judges MICHELS, SHEBELL and ARNOLD M. STEIN.

*Slater & Tenaglia,* attorneys for appellant (*Donald B. Mark,* of counsel and on the brief).

*Sufrin & Zucker,* attorneys for respondent (*James H. Waller,* of counsel and on the brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Defendant Marc B. Slater appeals from portions of two post-judgment orders of the Chancery Division, Family Part, entered in this protracted matrimonial matter involving plaintiff Stefanie Slater. The provisions of the order of February 26, 1987 challenged by defendant read:

ORDERED that Defendant shall pay to Plaintiff interest on $4,000.00 at the rate of 12% per annum from May 16, 1985 through December 31, 1985, and 9.5% on said $4,000.00 from January 1, 1986 through and up to January 23, 1986;

IT IS FURTHER ORDERED that a wage execution shall be issued against the wages of Defendant in the sum of $753.69 bi-weekly for child support and rehabilitative alimony;

IT IS FURTHER ORDERED that Defendant shall pay all medical bills incurred on behalf of his children, Jennifer and Michael, to the treating physician directly, and that he is to submit the necessary insurance forms to his insurance carrier to cover said expenses;

\*     \*     \*     \*     \*     \*     \*     \*

IT IS FURTHER ORDERED that at the end of each year, Plaintiff shall then reimburse Defendant 50% of all medical costs which are not covered by Defendant's insurance carrier within ten (10) days;

\*     \*     \*     \*     \*     \*     \*     \*

IT IS FURTHER ORDERED that Defendant's Cross Motion for a permanent injunction against Robert Block shall be DENIED, but Defendant is free to file a Complaint with this Court naming Robert Block as an additional party litigant to this action;

IT IS FURTHER ORDERED that Defendant's request for attorney's fees shall be and the same is hereby DENIED;

IT IS FURTHER ORDERED that Defendant's visitation of the children born of the marriage on the July 4 holiday is deemed to be the July 4, and July 4 only, and shall not be interpreted to extend past that one (1) day;

The provision of the order of April 21, 1987 challenged by defendant reads:

IT IS FURTHER ORDERED that the Defendant shall pay to the Plaintiff's attorney, Sufrin & Zucker, P.C., the sum of $600.00 as counsel fees in connection with the filing of Plaintiff's Motion within twenty-one (21) days from March 27, 1987, specifically by April 17, 1987.

## I.

We turn first to defendant's challenge to the validity of the wage execution. The judgment of divorce of October 27, 1985 required defendant to make bi-monthly payments to plaintiff of $384.46 for rehabilitative alimony and $369.23 for child support retroactive from August 1, 1985. On January 16, 1986, the trial court ordered defendant to make all future alimony and child support payments "through the Camden County Probation Department, the first payment being due at the Camden County Probation Department on Thursday, January 2, 1986 and each payment thereafter due at the Probation Department

within fourteen (14) days of the previous payment." Significantly, the order also contained the following provision:

IT IS FURTHER ORDERED that if any two payments to the Camden County Probation Department are late, an automatic wage execution shall issue against the defendant, Marc B. Slater, through his employer, Slater and Tenaglia, P.A.

Although defendant did make bi-weekly payments after January 16, 1986, the majority of these payments were received by the Probation Department several days after they fell due. Moreover, several of the checks received by plaintiff from the Probation Department were 69¢ short. Plaintiff thereupon moved for an order compelling defendant to make timely payments. It appeared that there was a discrepancy between the charging date payments were due pursuant to the trial court's order and the date payment was received according to the Probation Department printout. The trial court determined that the date the payments were received by the Probation Department was controlling and that defendant had in fact made late payments. The trial court, therefore, issued a wage execution against defendant.

We are satisfied that since plaintiff did not demonstrate defendant's failure "to make a required alimony, maintenance or child support payment that has arrearages accrued in an amount equal to the amount of the support payable for 14 days" as required under *N.J.S.A.* 2A:17–56.9, the trial court improperly issued a wage execution against defendant.

*N.J.S.A.* 2A:17–56.1 (*L.*1977, *c.* 292) when enacted in 1977 provided that:

In any proceeding brought for failure to make support and maintenance payments, upon a showing that such payments are more than 45 days overdue, the court may grant an order directing that an execution issue against the wages ... of the defendant.

This act was repealed by *N.J.S.A.* 2A:17–56.7—56.15 (*L.*1981, *c.* 417), entitled the "New Jersey Support Enforcement Act," which provided, among other things, that:

The payee ... may apply to the county probation office of the county in which the payer resides for an income execution after the payer has failed to make a

required alimony, maintenance or child support payment within 25 days of its due date. *N.J.S.A.* 2A:17–56.9.

The act was further amended by *L.*1985, *c.* 278 to comply with the federal Child Support Enforcement Amendments of 1984 (Pub.L. 98–378; 42 *U.S.C.* § 651 *et seq.*), which among other things, require states to undertake a greater degree of control over child and spousal support enforcement services before they can receive federal subsidies. *See* specifically 42 *U.S.C.A.* 654. The changes made in the New Jersey Support Enforcement Act indicate our Legislature's intent to make the remedy of wage execution (now termed "income withholding") available under less egregious circumstances than before. *N.J. S.A.* 2A:17–56.8 (*L.*1981, *c.* 417) initially read:

> Every order of a court for alimony, maintenance or child support payments shall include a written notice to the payer stating that the order *may* be enforced by an income execution upon the commissions, earnings, salaries, wages and other current or future income due from the payer's employer or successor employers. (Emphasis added).

*N.J.S.A.* 2A:17–56.8 now provides:

> Every order of a court for alimony, maintenance or child support payments *shall include a written notice to the obligor stating that the order shall be enforced by an income withholding upon the current or future income due from the obligor's employer or successor employers* and upon the unemployment compensation benefits due the obligor and against debts, income, trust funds, profits or income from any other source due the obligor. *The court shall ensure that in the case of each obligor against whom a support order is or has been issued or modified, the obligor's income shall be withheld to comply with the order.* An amount shall be withheld to pay the support obligation and it shall include an amount to be applied toward liquidation of arrearages reduced to judgments and payments for paternity testing procedures.

In light of the Legislature's substitution of the word "shall" for "may" in the amended statute, it is evident that it is no longer within the discretion of the court to order a wage execution upon a showing that the payor spouse has failed to make payment within a certain period of time of its due date. *See N.J.S.A.* 2A:17–56.9 (*L.*1981, *c.* 417). Rather, in keeping with the guidelines for more comprehensive state supervision of support enforcement services set forth in the federal law, income withholding is now mandatory "when support payments

are 14 days overdue." *Assembly Judiciary Committee Statement*, Senate, No. 2888—*L.*1985, *c.* 278.

Thus, *N.J.S.A.* 2A:17–56.9 currently provides that:

The income withholding shall be initiated by the probation department of the county in which the obligor resides after the obligor has failed to make a required alimony, maintenance or child support payment that has arrearages accrued in an amount equal to the amount of support payable for 14 days. Subject to the provisions of this act, the income withholding shall take effect without amendment to the support order or further court or quasi-judicial action.

In view of the specific guidelines contained in the act as to when income withholding "shall" go into effect, the remedy of a wage execution can issue only where the obligor fails to make payment within 14 days after the date it falls due. Accordingly, the January 16, 1986 order, which provides that "if any two payments ... are late, an automatic wage execution shall issue," must be interpreted consistently with the 14–day limit specified in *N.J.S.A.* 2A:17–56.9.

Here, although defendant was consistently late in making payments to the Probation Department, the Probation Department did receive the court-ordered payments within 14 days after payment was due in accordance with the January 16, 1986 order. Additionally, even though defendant's payments may have been 69¢ less than required starting with the July 1, 1986 payment, this shortage in the arrearages created after two payments became due would not be sufficient to invoke the income withholding provisions of *N.J.S.A.* 2A:17–56.9. The provision requires that the arrearages accrued be equal to the amount payable for 14 days. In sum, defendant's failure to make the payments promptly on the dates required by the January 16, 1986 order or to make the full payments to the Probation Department does not satisfy the statutory criteria necessary to evoke the wage execution or incoming withholding provisions of the New Jersey Support Enforcement Act. Consequently, we hold that the trial court improperly issued a wage execution against defendant and therefore reverse and vacate that provision of the February 26, 1987 order.

## II.

Defendant next challenges the rates of 12% and 9.5% awarded on the $4,000 Keogh fund assigned to and withheld from plaintiff and urges us to award interest at the rate of 10.34%—the interest rate that was paid on the fund. Under the terms of the partial final judgment entered by the trial court on July 3, 1985, plaintiff was "entitled to receive by way of equitable distribution ... the sum of $4,000.00, presently held in a certain KEOGH Plan presently maintained at City Trust Services N.A. ..." This provision also mandated that:

> Trustee shall transfer from the account of MARC B. SLATER to STEPHANIE B. SLATER or to an IRA established by her as alternate payee, the sum of $4,000 *plus the accrued interest on said sum from May 16, 1985 until distributed to plaintiff from the aforementioned KEOGH account.* (Emphasis added).

Although defendant transferred the $4,000 Keogh fund to plaintiff on January 23, 1986, the parties failed to agree on the applicable rate of interest and the amount due thereunder. On December 12, 1986, the return date of plaintiff's first motion to enforce litigant's rights, the trial court held that plaintiff was entitled to interest at the rate of 12% for the period from May 16, 1985 through December 31, 1985, and that commencing January 1, 1986, plaintiff would be entitled to interest at the rate of 9.5%.

We hold that for the period from May 16, 1985 until July 3, 1985, when the trial court ordered that the fund be transferred to plaintiff with the interest accrued from May 16, 1985 until distributed, the proper rate of interest was 10.34%—the interest rate that was actually paid on the fund. As of July 3, 1985, when defendant failed to transfer the fund to plaintiff in accordance with the trial court's order, the rates of interest on the $4,000 were properly determined in accordance with the provisions of *R.* 5:7-4 and *R.* 4:42-11. *R.* 5:7-4 provides that:

> In awarding alimony or support, or both, the judgment or order shall ... provide ... that payments shall be subject to a late interest charge at the rate

prescribed by *R.* 4:42–11(a) unless the court, for good cause shown, otherwise orders.

Under *R.* 4:42–11(a):

... judgments, awards and orders for the payment of money ... shall bear simple interest as follows:

(i) ... 12% for the period between September 14, 1981 and January 1, 1986. (ii) Commencing January 2, 1986 and for each calendar year thereafter, the annual rate of interest shall equal the average rate of return, to the nearest whole or one-half percent, for the corresponding preceding fiscal year terminating on June 30, of the State of New Jersey Cash Management Fund (State accounts) as reported by the Division of Investment in the Department of the Treasury.

The 1986 Edition of the New Jersey Rules adds the following Official Note:

Pursuant to paragraph (a)(ii) of the rule, the annual rate of interest commencing January 2, 1986 and for the remainder of that calendar year is 9.5%.

Since the order requiring the $4,000 Keogh fund to be transferred by May 16, 1985 was not complied with by defendant until January 23, 1986, the interest required to be paid from May 16, 1985 through July 2, 1985 should be at the rate of 10.34%. As of July 3, 1985, the interest required to be paid should have been at the rate of 12% through January 1, 1986 (not through December 31, 1985 as ordered by the trial court) and thereafter at the rate of 9.5% from January 2, 1986 (not January 1, 1986) to January 23, 1986. Consequently, we modify the provision of the order of February 26, 1987 awarding interest on the $4,000 Keogh fund and remand the matter to the trial court to recalculate the interest due thereon in accordance with our opinion.

### III.

We are also satisfied that the trial court did not mistakenly exercise its discretion by awarding plaintiff counsel fees of $600 in connection with plaintiff's motion in March 1987 to compel defendant to pay the interest due on the $4,000 Keogh Fund settlement, and to reimburse her for certain court-ordered expenses, including medical expenses incurred on behalf of the children. Considering the complexity of the case, the services

rendered as a consequence of the parties' inability to resolve these issues through settlement, defendant's financial ability to pay and plaintiff's needs, we conclude that the award of counsel fees was not a mistaken exercise of discretion by the trial court. The fees were reasonable and necessary under the circumstances. *See Chalmers v. Chalmers,* 65 *N.J.* 186, 195 (1974); *Scalingi v. Scalingi,* 65 *N.J.* 180, 184 (1974); *Williams v. Williams,* 59 *N.J.* 229, 233 (1971); *Mastropole v. Mastropole,* 181 *N.J.Super.,* 130, 140 (App.Div.1981); *Shaffer v. Shaffer,* 154 *N.J.Super.* 491, 495 (App.Div.1977).

## IV.

Finally, we point out that the trial court properly determined that it did not have jurisdiction to enjoin or restrain Dr. Robert Block, plaintiff's friend, from interfering with defendant's court-ordered visitation with his children since Dr. Block was neither a party to this action nor served with process. It is fundamental that an injunction will not be granted that directly affects the rights of persons who are not parties and who are not represented in the action. *Zaleski v. Local 401, United Elec., etc., of America,* 9 *N.J.Super.* 206, 208–209 (App.Div. 1950), app. dism. 6 *N.J.* 109 (1951); *See also Alemite Mfg. Corp. v. Staff,* 42 *F.*2d 832, 832–833 (2d Cir.1930); *R.* 4:52–4. "In every judicial procedure it is essential that the person whose rights are to be effected should be a party and have an opportunity of making a defense; and he must be brought in by process, which need not be a subpoena or other writ, but may be an order or notice." *In re Hayden,* 101 *N.J.Eq.* 361, 365 (Ch.1927).

Consequently, we affirm the provision of the February 26, 1987 order that denied defendant's application for injunctive relief against Dr. Block without prejudice to defendant's right to seek such relief in this action by an order to show cause or motion, serving Dr. Block with such process as may be required by the court and affording him an opportunity to be heard.

520

## V.

We are satisfied from our study of the record in light of the arguments presented that the remaining issues raised are clearly without merit. *R.* 2:11–3(e)(1)(E).

Accordingly, except to reverse that portion of the order of February 26, 1987, directing the issuance of a wage execution against defendant and to remand the matter to the trial court to recalculate the interest due on the $4,000 Keogh fund, the challenged provisions of the orders under review are affirmed. Each party shall bear his or her own counsel fees and costs incurred in connection with this appeal.