716 A.2d 1216 (1998)
315 N.J. Super. 176
Jon STEIGER, Plaintiff,
v.
Regina ARMELLINO, Defendants.
Superior Court of New Jersey, Chancery Division, Monmouth County, General Equity Part.
Decided June 22, 1998.[1]
Jon Steiger, Manasquan, plaintiff pro se.
Newman Scarola & Associates (James M. Newman, Freehold, Esquire, appearing), for defendant.
FISHER, P.J.Ch.
By way of this action, plaintiff Jon Steiger, an attorney-at-law, seeks a judgment declaring the viability of an attorneys' lien he previously asserted in connection with his representation of defendant Regina Armellino in a matrimonial action.[2] On May 22, 1998 an order was entered requiring defendant to show cause why this court should not declare an attorney's lien to have attached to certain proceeds arising out of that matrimonial action and why funds currently being held in escrow, the movement of which was temporarily restrained on May 22, 1998, should not be permanently restrained pending a fee arbitration proceeding. Defendant has opposed that application.
Plaintiff's assertion of a lien is based upon N.J.S.A. 2A:13-5, which states:
After the filing of a complaint or third-party complaint or the service of a pleading containing a counterclaim or cross-claim, the attorney or counsellor at law, who shall appear in the cause for the party *1217 instituting the action or maintaining the third-party claim or counterclaim or cross-claim, shall have a lien for compensation, upon his client's action, cause of action, claim or counterclaim or cross-claim, which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order, nor by the entry of satisfaction or cancellation of a judgment on the record. The court in which the action or other proceeding is pending, upon the petition of the attorney or counsellor at law, may determine and enforce the lien.
Certain essential facts are not disputed. Plaintiff's representation of defendant in the matrimonial action was terminated on June 4, 1997. Soon thereafter, defendant was presented with plaintiff's statement of services rendered and a notice of plaintiff's intention to commence legal action with regard to his claim for the payment of attorneys' fees, as required by R. 1:20A-6. In response, defendant demanded that the questions concerning plaintiff's claim for fees be arbitrated before the Fee Arbitration Committee.[3] After plaintiff's assertion of that claim and during the pendency of their fee dispute in the Ocean County Fee Arbitration Committee, the matrimonial action was settled and a judgment of divorce entered by the Honorable Anthony J. Mellaci, Jr., J.S.C., on May 14, 1998.
Plaintiff, it appears, came to learn of that settlement while in the Monmouth County Court House on another matter. Efforts were then undertaken by defendant to have funds received through the settlement of the matrimonial action paid out to her. Plaintiff filed this action and obtained a temporary restraining order prohibiting the transfer out of escrow to defendant of $15,000 of the settlement funds (which approximates the amount claimed by plaintiff to be due him as a result of his participation in the matrimonial action).
On the surface there appears little doubt as to plaintiff's right to relief. Defendant brought a claim for relief in the matrimonial action; plaintiff represented defendant in that action; and money is due defendant as a result of the judgment entered in that action. But defendant has raised an issue that renders the matter unlike the reported decisions involving N.J.S.A. 2A:13-5. See, n. 6, infra. That is, at the time plaintiff's representation of defendant in the matrimonial action was terminated, the only named parties to that action were defendant and her husband. After plaintiff's departure, an amended complaint was filed by defendant seeking relief from her ex-husband's parents. By way of that amended complaint, defendant alleged that her ex-husband forged or caused to be forged her name on a note and mortgage held by her ex-husband's parents on the marital home. Thus, defendant alleged in her amended complaintfiled by plaintiff's successor as defendant's counselthat the court should declare the note and mortgage held by her husband's parents on her marital home to be null and void and that "the sum of $69,735.82 being held in escrow from the sale of the marital home be awarded to plaintiff as her share from equitable distribution of the marriage". The settlement agreement reached in the matrimonial action called for the payment from the escrowed proceeds from the sale of the marital home (to which her ex-husband's parents had asserted an interest) to defendant of $37,500. It appears that other than defendant's entitlement to certain weekly child support and alimony payments from plaintiff not relevant to the present issue, that $37,500 constitutes the only funds which defendant has or will receive from the matrimonial action.
Plaintiff contends that this is a recovery from the matrimonial action to which his lien has attached; defendant asserts that these funds are only the product of her claim against her ex-husband's parents, unpleaded during plaintiff's stewardship in the matrimonial action. This court finds that the lien did *1218 attach to the aforementioned $37,500 not only because it is irrelevant that the claim against the ex-husband's parents was not filed and served until after plaintiff's services were terminated, but also because defendant's contentions misapprehend the true character of the settlement in the matrimonial action.
Defendant has, first, provided no support for her contention that an attorney's lien, asserted by way of N.J.S.A. 2A:13-5, attaches only to the particular pleading filed by that attorney. The statute itself makes no such distinction; rather, it states that after the filing of a pleading the attorney "who shall appear in the cause for the party" shall have a lien for compensation "upon his client's action, cause of action, claim or counterclaim or cross-claim." While the statute may be subject to more than one interpretation through its imprecise language, there is nothing about the wording of the statute which would necessarily suggest that the attorneys' lien attaches only to the client's recovery on the pleadings actually filed by the attorney-lienholder and no other subsequent amended pleading filed in the same action. To hold to the contrary would suggest a means through which connivance after an attorney's termination could negate an otherwise justified lien on a client's claim.[4] Legislation should be read so as to avoid an unreasonable or unanticipated result. See, e.g., Matter of J.W.D., 149 N.J. 108, 115-116, 693 A.2d 92 (1997). The Legislature clearly meant to provide a mechanism by which an attorney, after termination, would have the ability to be compensated, if necessary, by a lien on any recovery in the action. An unwarranted diminishment of that right would occur through the adoption of defendant's approach. This court declines to impress such limitations on a terminated attorney's rights to compensation in the absence of a clear direction from the Legislature or our appellate courts.
Even if such a limitation were appropriate, the circumstances of this case do not suggest its application. Defendant's contention arises from her claim that her recovery of $37,500 in the matrimonial action came from her ex-husband's parents and not her ex-husband. That is not however what appears in the settlement agreement, which states, in pertinent part:
The parties agree to the following in full and complete satisfaction of any and all claims which each may have against the other for equitable distribution pursuant to N.J.S.A. 2A:34-23;
1. MARITAL HOMEThe parties were owners by joint tenancy by the entirety of the marital home .... The home was sold and the sum of $71,935.82 is being held in escrow.... This money was allegedly due and owing to the parents of Nicholas Armellino. It is agreed that from these monies, the sum of $37,500 shall be paid to the Wife [defendant herein] as payment in full of her share of equitable distribution. It is further agreed that the Wife is relieved from the payment of any alleged monies owed to John R. Armellino and Nina Armellino.
Settlement Agreement, Article III at page 3 (emphasis added). Again, defendant had claimed by way of the amended complaint that her husband had forged or caused to be forged her name on the note and mortgage held by his parents on the marital home. By way of the settlement, defendant received approximately 50% of the net proceeds from the marital home notwithstanding her husband's parents' claim to the satisfaction of that note and mortgage. And both parties agreed that these monies constituted the "payment in full of [defendant's] share of equitable distribution", and that this payment completely satisfied "any and all claims which each [marital partner] may have against the other". It thus appears that defendant's claim in the present actionthat the $37,500 was in settlement of some claim between she and her husband's parentsis belied by the settlement agreement. What *1219 happened, in essence, is that all the parties to the matrimonial action avoided a trial on the forgery issues, the husband's parents chose not to pursue their claim against defendant on the disputed note and mortgage, and defendant received approximately 50% of the former equity in the marital home. To say this $37,500 came from defendant's husband's parents would require this court to find that her husband's parents had a viable claim against defendant and her share of the marital home proceeds. To the contrary, the parties considered the parents' claim to those funds in their settlement agreement to still be "alleged". Clearly defendant's recovery was based upon her claim in the matrimonial action for equitable distribution of the marital home, which claim remained unfettered by the parents' alleged lien.
Since defendant's cause of action for equitable distribution was no doubt urged during the time that plaintiff was counsel to defendant in that action, defendant's contention that plaintiff's lien could only attach to the pleading actual filed by plaintiff is satisfied by the circumstances of this case. So, notwithstanding, the legal accuracy of the claim that an attorney's lien attaches only to the very pleading filed by that attorney while acting on behalf of the client, there can be no question, based upon how these matrimonial litigants characterized the payment of $37,500 to defendant, that it constitutes a recovery by defendant on the claim asserted by the former attorney and thus the lien attached and follows the proceeds to their present location.
Lastly, defendant argues that because her dispute with plaintiff is currently pending in the fee arbitration committee, that there can be no legal action, such as the present action, by way of court rule. It is true that R. 1:20A-3 states that "[i]f an action for payment of the fee is then pending, it shall be stayed pending a determination by the fee committee, and the amount of the fee as so determined may be entered as a judgment in the action." Defendant would have this court conclude that an attorney is forbidden from prosecuting legal action once the dispute is placed in the hands of a fee arbitration committee. That conclusion is generally true but, like any rule, has its exceptions. One such exception is the circumstance presented here.
As stated above, plaintiff had a lien on any recovery in the underlying action. Pursuant to court rule, he dutifully notified his former client of her right to arbitrate his claim and, of course, proceeded consistently with the option chosen by the client.[5] On the other hand, the client, knowing full well of the attorney's claim for fees, sought to surreptitiously obtain physical control of her share of equitable distribution. She now raises the court rules concerning fee arbitration, and R. 1:20A-3 in particular, as a shield to ward off plaintiff's attempts to preserve the res of their dispute. She is, again, mistaken. R. 1:20A-3 prohibits the attorney from further pursuing any legal action "for payment of the fee". The present action does not seek "payment of the fee"; rather, plaintiff seeks an order which would restrain certain funds to which the lien has attached pending a resolution of the fee dispute in the Ocean County Fee Arbitration Committee. R. 1:20A was not intended to deprive an attorney of the right to assert the lien created by legislation or to bar a court of equity from preserving the status quo, and the res of the fee dispute, pending the final disposition of the attorney/client disputes in the fee arbitration committee. This court full well acknowledges that primary jurisdiction as to whether plaintiff is due any part or all of his alleged fee for having represented defendant in the matrimonial action resides with the fee arbitration committee. Plaintiff's request that this court recognize and declare that a lien has attached on the proceeds from the sale of the marital home, and that the funds should remain restrained pending a final determination by the fee arbitration committee, is not inconsistent with R. 1:20A.[6] This court is *1220 fully empowered to so act in an appropriate case to protect the status quo while another tribunal considers the merits of the parties' disputes. See, e.g., Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806, 812 (3d Cir.1989) (a court of equity possesses the authority to enter injunctive relief pending the institution of arbitration proceedings).
For the foregoing reasons, final judgment in this action will be entered (1) declaring that plaintiff possesses an attorney's lien, by virtue of N.J.S.A. 2A:13-5, in an amount to be determined by the fee arbitration committee on the proceeds due defendant (not in excess of $15,000) by way of the settlement of the matrimonial action, and (2) permanently enjoining defendant and any of her representatives (or any other person who has or may come into possession of the funds in question and who has notice of that injunction) from disbursing, dissipating, or otherwise disposing of the funds pending a determination, by the fee arbitration committee, of the fee disputes existing between these parties.
A final judgment in conformity with the foregoing has been entered.
NOTES
[1] This opinion supersedes the oral opinion delivered on June 12, 1998.
[2] Regina Armellino v. Nicholas M. Armellino, Docket No. FM-13-711-96B (hereafter "the matrimonial action").
[3] Apparently because of plaintiff's prior service on the Monmouth County Fee Arbitration Committee, this particular arbitration has been venued in Ocean County. A hearing on that matter has not yet occurred.
[4] There is no dispute that a motion to amend the complaint to join the husband's parents was filed by plaintiff Steiger and that the family judge either reserved decision or simply did not rule on that application. There is also no dispute that counsel for defendant's husband's parents appeared at a case management conference prior to plaintiff's termination as counsel for defendant in that matter. It appears that the actual filing of the complaint was something of a formality which had not occurred by the time plaintiff was terminated as counsel for defendant.
[5] Indeed, there is no dispute that plaintiff fully cooperated with the transfer of the file to his successor and also provided an affidavit in support of the successor's motion to file the amended complaint referred to herein.
[6] This court's determination that it may so act to preserve the res of the fee dispute is not inconsistent with prior reported decisions. While Mateo v. Mateo, 281 N.J.Super. 73, 656 A.2d 846 (App. Div.1995) and Rosenfeld v. Rosenfeld, 239 N.J.Super. 77, 570 A.2d 1026 (Ch.Div.1989) appear to suggest that the fee arbitration procedure and the right to seek the declaration of an attorneys' lien are mutually exclusive, it is important to note that both those decisions deal with the question of whether the attorney was required to give the client notice, prior to the commencement of legal action, of the right to pursue fee arbitration. In this case, plaintiff gave such notice and now seeks only to preserve the fund in question pending the fee arbitration committee's determination and seeks neither a judgment declaring how much, if any, is due him nor directing its payment.